UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN
_____

In re

RICHARD S. RADBIL,

         Debtor.
_____

VIRGINIA E. GEORGE, TRUSTEE,

         Plaintiff,

v.

ARGENT MORTGAGE COMPANY, LLC, and
AMERIQUEST MORTGAGE COMPANY,

         Defendants.

Case No. 04-25643

Chapter 7

Adversary No. 05-2311

_____

MEMORANDUM DECISION ON PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
_____

      The chapter 7 trustee brought this adversary proceeding to avoid the mortgage lien of defendant Argent Mortgage Company, LLC, and to preserve it for the benefit of the estate. Argent answered the complaint and asserted affirmative defenses. The trustee subsequently filed an amended complaint, asserting identical causes of action against Argent, but also asserting causes of action against Ameriquest Mortgage Company. The amended complaint seeks to preserve the Argent mortgage, if avoided, and to prime the mortgage of Ameriquest, who refinanced the debtor's property postpetition. The trustee filed a motion for partial summary judgment as to Argent only, seeking a determination that the recording of the mortgage on the debtor's property constitutes an avoidable preferential transfer and Argent's section 547(e) defense is inapplicable. The trustee and Argent both submitted briefs and stipulated facts.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(K), and the court has jurisdiction under 28 U.S.C. § 1334. The following constitutes the court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

BACKGROUND

The material facts of the case are not disputed. At the time of the challenged transaction, the debtor's homestead was subject to an existing loan secured by a non-avoidable mortgage against the property in favor of Washington Mutual. On March 8, 2004, the debtor and his wife refinanced their house, executing a promissory note in the amount of $460,750 in favor of Argent, the new lender. To secure the note, the debtor and his wife also executed a mortgage encumbering homestead property owned by them. A December 16, 2003, appraisal of the property valued the homestead at $485,000. The note and mortgage were funded on March 12, 2004. Of the $460,750 proceeds from the note, approximately $441,303 was used to repay the balance due Washington Mutual, $15,316 was paid to the debtor's wife, and the balance covered closing costs and fees. It is not clear why the payment was made to the debtor's wife, and the trustee argues that at least this amount is subject to preference recovery (the wife is not a party to this action) because the equity in the property was diminished.

According to the affidavit and business records of Dawn Metzinger, executive vice president of Wauwatosa Title & Closing Service, the closing company delivered the mortgage to the Milwaukee County Register of Deeds on March 15, 2004, three days after the loan was funded. Ms. Metzinger affirmed it was the custom and practice of Wauwatosa Title & Closing Service to hand deliver documents to the Register in Milwaukee for recording. There is no other evidence of when the Register actually received the mortgage.

2

The mortgage was stamped by the Register of Deeds for Milwaukee County as having been recorded on March 31, 2004, as document no. 8754549. On April 16, 2004, the debtor filed his chapter 7 petition. On June 2, 2004, a satisfaction of the prior mortgage against property in favor of Washington Mutual was recorded by the Register. At all times between the date of the transfer and the filing of the petition, the debtor was insolvent and Argent was a creditor of the debtor and his wife.

## ARGUMENTS

The trustee argues the recording of the mortgage constituted a preferential transfer, as all elements set forth in 11 U.S.C. § 547(b) have been met. In Wisconsin, perfection of a mortgage transaction occurs on the date the document is recorded, and recording establishes the order of interests in the real estate. Wis. Stat. § 706.08(1)(a). The operative date in this case is March 31, 2004, the date the mortgage was recorded by the Milwaukee County Register of Deeds. The defendant has not conclusively established any date on which the mortgage was delivered to the Register. Regardless of the date of delivery, simple delivery of the document to the Register for recordation is insufficient for the transfer to be perfected because the document is subject to review and acceptance by the Register. Since recording, i.e., perfection, occurred more than 10 days after the mortgage was granted, the loan was funded, and the prior mortgagee was paid off, the perfection is a separate transaction subject to avoidance, leaving Argent unsecured and preserving the lien for the benefit of the estate. *See* 11 U.S.C. § 547(e)(2)(A).[1]

---

[1] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (2005), amended this section to provide that a transfer takes place at the time it takes effect between the transferor and transferee, provided it is perfected within 30 days rather than 10 days. This change is not applicable to this case.

3

The defendant urges this court to take a less technical approach to the Code. Other courts have recently found that in order for a transfer to be avoidable under section 547, an asset that had been available to many creditors must have been diverted somehow to one creditor, who was thereby "preferred," while the others were correspondingly disadvantaged or prejudiced. If other creditors were not harmed by the transfer, then it could not be a preference and no corrective action would be warranted. The defendant argues the trustee should thus be denied summary judgment either because there was no diminution of the estate or the earmarking doctrine precludes recovery by the trustee.

DISCUSSION

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.

Because the trustee seeks to avoid the transfer as preferential, she has the burden of proving all of the necessary elements of an avoidable preference. 11 U.S.C. § 547(g). The elements of an avoidable preference are set forth in section 547(b) of the Bankruptcy Code. In relevant part, that section provides as follows:

> [T]he trustee may avoid any transfer of an interest of the debtor in property –
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

> (5) that enables such creditor to receive more than such creditor would receive if –
>> (A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Under the Code, the trustee may avoid a transfer of the debtor's interest in property made within 90 days of bankruptcy that fulfills the requirements of that section, and, thus, effectively "prefers" one creditor over others. *See* 11 U.S.C. § 547(b). The granting of a security interest – here, the mortgage given to the creditor by the debtor – constitutes such a "transfer" of the debtor's interest in property. *See* 11 U.S.C. § 101(54). If a security interest is given to refinance a debtor's property, section 547(e)(2)(A) provides an exception to the trustee's avoiding power so long as the transfer is perfected at or within 10 days after such transfer, i.e., the creation of the security interest, in which case the perfection is deemed to have taken place at the time the security interest was granted. On the other hand, if the security interest is perfected after that 10-day period, the transfer takes place at the time of perfection. 11 U.S.C. § 547(e)(2)(B). Argent perfected its security interest in the debtor's property after the expiration of the 10-day relation-back period established by section 547(e)(2)(A). The trustee's position is that the perfection cannot relate back to the creation of the interest, resulting in two transfers, the first creating the security interest, and the avoidable second transfer (perfection), leaving the trustee to step into priority ahead of an unrecorded mortgage. 11 U.S.C. § 544(a); Wis. Stat. § 706.08(1).

Argent cites several cases to support its position that "diminution of the estate" is a necessary element of a preference, and here the estate was not diminished by its late recording. *See*, *e.g.*, *In re Lee*, 339 B.R. 165 (E.D. Mich. 2006); *In re Davis*, 319 B.R. 532 (Bankr. E.D.

Mich. 2005); *In re Biggers*, 249 B.R. 873 (Bankr. M.D. Tenn. 2000). The *Lee* court referenced a Seventh Circuit decision, *Warsco v. Preferred Technical Group*, 258 F.3d 557 (7th Cir. 2001), wherein diminution of the estate was discussed and approved as a consideration in whether a preference had occurred.

In *Warsco* the purchaser of the debtor's assets, in a separate transaction that was one of the conditions for the entire deal, made a payment of $500,000 to one of the debtor's creditors for a promissory note on which the debtor was obligated. In opposition to the chapter 7 trustee's attempt to recover the payment as a preferential transfer, the creditor argued that the payment it received from the purchaser was not a transfer of an interest of the debtor in property. Recognizing that a preferential transfer need not be made directly by the debtor, the court noted that an indirect transfer made to a creditor by a third party on behalf of the debtor may be subject to avoidance. In determining whether a transfer made by a purchaser to one of the debtor's creditors in the context of an asset sale is a transfer subject to avoidance, the court identified the fundamental issue as whether the funds used to make the payment were part of the purchase price for the debtor's assets. In essence, the question was whether the creditor was receiving funds that would otherwise have gone to the debtor for the benefit of all creditors, not just the one who received it.

In interpreting section 547, the Seventh Circuit remarked on whether the transfer diminished the debtor's estate and concluded:

> We have recognized in the past that diminution of the debtor's estate is not an element of the preference statute. However, we also have recognized that "the 'diminished estate' element of a preferential transfer is consistently applied," and we have previously refused to disturb its application. In keeping with our prior precedent and that of other circuits, we continue to consider whether the transfer in question diminished the debtor's estate.

*Id*. at 564 n. 11 (citations omitted). After considering all facets of the complex transaction, the court reversed the district court's grant of summary judgment in the purchaser's favor, determining that the trustee was not afforded the benefit of all inferences that could be drawn from the unanswered questions in the record. While the court stated it would "consider" whether the transfer diminished the debtor's estate, it stopped short of saying that factor determined the outcome of a challenged transfer.

Mere substitution of new security in place of security for an old debt does not ordinarily result in a preference, because there is no diminution of the debtor's estate whereby creditors may be injured. 5 COLLIER ON BANKRUPTCY ¶ 547.03[2] (15th ed. revised). Nevertheless, the theory necessarily assumes that the creditor has a continuing security interest in the property of the debtor. The diminution of estate theory does not apply when the security interest in the released collateral has been terminated and the debtor gives new collateral which requires "re-perfection"of the creditor's security interest. *In re Prindle*, 270 B.R. 743, 747-48 (Bankr. W.D. Mo. 2001). This is especially true where state law provides an exclusive method for the perfection of a security interest. *See id*. at 748.

Argent also contends the earmarking doctrine precludes recovery by the trustee. *See*, *e.g.*, *In re Heitkamp*, 137 F.3d 1087 (8th Cir. 1998); *In re Lazarus*, 334 B.R. 542 (Bankr. D. Mass. 2005).[2] In general, the earmarking doctrine states that when a third party lends money to the debtor for the specific purpose of paying off a designated creditor, that money is not "an interest

---

[2]Subsequent to the filing of the defendant's brief, the Eighth Circuit vacated the district court's judgment in *In re Lazarus*, ___ F.3d ___, No. 06-1982, 2007 WL 49649 (1st Cir. Jan. 9, 2007).

of the debtor in property," so the transfer fails to satisfy one of the requirements of a preference under section 547(b). Similar to the "diminished estate" requirement, the inquiry under the earmarking doctrine is whether an asset would have been available for distribution to all creditors but for its transfer to the recipient.

This court's colleague rejected a similar argument in *In re Moeri*, 300 B.R. 326 (Bankr. E.D. Wis. 2003), finding while the earmarking doctrine applies in a refinancing situation to determine whether the debtor's payment to an existing creditor with funds borrowed from a new creditor qualifies as a preference, it had no application in assessing the preferential nature of a separate transfer which occurred when the new creditor belatedly perfected its security interest. *See also In re Messamore*, 250 B.R. 913 (Bankr. S.D. Ill. 2000) (finding the transfer at issue was not the repayment of the existing creditor, but instead the transfer that occurred when the new creditor perfected its lien on the debtors' property more than 10 days after the closing of the loan transaction). This court likewise finds the earmarking doctrine inapplicable to the facts of this case.

Of course, the previous discussion would not be necessary if the mortgage is deemed recorded at the time the title company delivered the mortgage to the Register, within the 10-day grace period, as its representative claims it did because that was its practice. The trustee points out that the creditor has no other proof. Pursuant to section 547(e)(1)(A), a transfer of real property "is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(A). The question that naturally leaps to mind is, if the creditor can prove such delivery, and such proof is necessary before the court will

8

accept it, what is the legal effect?

Recordation is not essential to the creation of a lien. Rather, the recordation relates to third parties and the priority of their interest vis-à-vis the recorded mortgage in the subject real estate. Recordation basically involves copying the instrument into books kept for such purpose by public recordation offices. Once recorded, public notice is accomplished. 1 LAW OF DEBTORS & CREDITORS § 8.23 (A. Mechele Dickerson, et al. eds., updated Jan. 2006 ). Traditionally, most statutes have provided that recordation of a mortgage is complete so as to give notice when it is delivered to the recording officer. 1 LAW OF DEBTORS & CREDITORS § 8.25. This, of course, assumes the public record is updated within a short period after the document is received for recording, which does not always comport with reality.

The applicable Wisconsin statutes do not, at least explicitly, make perfection complete when a mortgage is delivered to the Register. In Wisconsin, a valid lien, effective as to third parties, is achieved only once the filing, acceptance and notation in accordance with sections 706.05, 706.08 and 59.43, Wis. Stats., takes place. Section 59.43, Wis. Stat., sets forth the duties of the Register of Deeds. After delivery of the mortgage for recording, the county register shall "cause to be recorded" all properly submitted documents. Wis. Stat. § 59.43(1)(a). The Register's duties further require that he or she

> (e) Endorse upon each instrument or writing received by the register for record a certificate of the date and time when it was received, specifying the day, hour and minute of reception, which shall be evidence of such facts. Instruments shall be recorded in the order in which they are received.
> (f) Endorse plainly on each instrument a number consecutive to the number assigned to the immediately previously recorded or filed instrument, such that all numbers are unique for each instrument within a group of public records that are kept together as a unit and relate to a particular subject.

9

Wis. Stat. § 59.43(1).

The obvious intent of this statute is to ensure that documents relating to a particular piece of property, in this case real estate, are recorded in the precise order in which they are received, thereby maintaining the priority of interests in the chain of title.

Section 706.05, Wis. Stat., enumerates the formal requisites for recording, which apparently were met here. The trustee argues that the possibility of rejection by the Register means that perfection must take place at recording; it cannot take place at receipt by the Register as the creditor argues. While it is possible for a document to be bumped out of the order in which they are to be recorded, possibly due to defects, such as occurred in *In re Koshar*, 334 B.R. 889 (Bankr. W.D. Mich. 2005), no such rejection of Argent's mortgage occurred.

Section 547(e)(1)(A) states that for the purpose of this section, perfection occurs when "a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee." In other words, Argent is perfected when no bona fide purchaser could record a superior interest in the real estate. Argent asserts that this is the date the document is delivered to the Register, because it was not rejected and no one filing thereafter could obtain a superior interest. If the relevant date is the date of delivery, and Argent can prove it, it falls within the 10-day grace period of section 547(e)(2)(B) and cannot be avoided.

Section 706.08, Wis. Stat., sets forth the effect of nonrecordation of a conveyance. That effect is that "every conveyance that is not recorded as provided by law shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate or any portion of the same real estate whose conveyance is recorded first." Wis. Stat. §

10

Case 05-02311-mdm    Doc 19    Filed 02/27/07    Page 10 of 14

706.08(1). This describes the typical race-notice system of real estate records so ably analyzed in *Koshar*, 334 B.R. 889. As in *Koshar*, it appears that the Milwaukee County Register of Deeds does not mark each document with the date, time and minute of reception, as is required by statute, just as the Register in *Koshar* did not keep entry books containing the same statutorily mandated information. This is doubly regrettable, since the information would be "evidence of such facts." Wis. Stat. 59.43(1)(e). If documents are recorded in the order received, this will only be a problem if a good faith purchaser acquires an interest relying on a record that reveals no prior interests, and the prior interest is filed but not on the record books at the time the subsequent purchaser gives value. Numerous cases in which this occurred were cited in *Koshar*, including *Butler v. Bank of Mazeppa*, 94 Wis. 351, 68 N.W. 998 (1896), in which a one hour priority ruled the day. There were apparent shenanigans in *Butler*, which allowed a questionable faith purchaser to keep his good faith assignee in place in the queue, but practically any system is subject to the occasional anomaly. Usually, the race-notice system works, especially if paper documents are walked up to a window in the courthouse. Unfortunately for our purposes, this system was developed with little or no consideration for a bankruptcy deadline, hypothetical status of a trustee, and possible avoidance of a valid transfer, all of which takes place far from the county courthouse. The *Koshar* court found that the recording date is the date of perfection, and to do so, it had to find that in all probability a Michigan court would so find. Given the similarities in the statutes, this court finds that the date of recording is the date of perfection in Wisconsin as well.

       Much of the creditor's arguments center on the underlying policy of preference statutes, and if everything had occurred as the parties intended, there would be nothing for the trustee to

11

recover. Before these transactions took place, all but minimal equity in the debtor's home was exempt, and the trustee probably would not have pursued it. The statute was intended to prevent some creditors from being preferred over others, and a hypertechnical reading of the statute under the facts of this case does not further that end. The "diminution of the estate" concept was developed for just this reason. *See, e.g., Warsco*, 258 F.3d 557. If no harm to general creditors occurred because (maybe) the Register of Deeds was too slow to meet the unreasonable time limits of the code, now lengthened by the 2005 amendments, it would actually be a perversion of the laudable principles intended to be advanced by the preference statute.

This court appreciates hyperbole as much as the attorneys arguing the case. However, if there is anything the 2005 amendments taught us, it is that courts are expected to apply the words of the statute precisely, without regard to court-perceived fairness, equality of result, or good policy, except to the extent allowed by the code. Many specific amendments were made to the code, and many removed the application of discretion, logic, and judgment to fact situations that arise in bankruptcy cases. The overall tone was downright remedial. In other words, loose arguments of equity are not as effective as they used to be, notwithstanding that the date of filing of this case means the exact amendments do not apply.

Even though we find that the 10-day relation back requirement of section 547(e)(2)(B) is not met, thus resulting in two transfers instead of one, this does not end the inquiry. Section 547(c) states that a trustee may not avoid a transfer that was intended to be a contemporaneous exchange for new value and was in fact a contemporaneous exchange. Unlike many cases in which a substantial period of time elapsed between the creation of a lien and perfection, *see, e.g., In re Messamore*, 250 B.R. 913 (Bankr. S.D. Ill. 2000) (50 days), *In re Vatnsdal*, 139 B.R. 472

12

(Bankr. D. N.D. 1991) (11 months), the allegation in this case is that the creditor attempted to perfect its interest promptly after obtaining it. This, of course, is a question of fact and requires proof, and the burden of proof is on the creditor. 11 U.S.C. § 547(g). Furthermore, the Seventh Circuit Court of Appeals has held that under some circumstances, two events can be collapsed and treated as a single transaction. *Pine Top Ins. Co. v. Bank of Am. Nat'l Trust & Savs. Ass'n,* 969 F.2d 321 (7th Cir. 1992). In *Pine Top*, the debtor was issued letters of credit that were intended to be secured, but it took two to three weeks before certain collateral was transferred to secure the issuance of the letters. Haste in issuing the letters was necessary because of insurance deadlines, and the bank was not dilatory in following up with pressing for the transfer of collateral and execution of associated documents. The parties never intended that the bank be unsecured, and the court found that there was no diminution of the estate. While the case involved diversity jurisdiction and a state liquidation statute, the analysis of the concept of "contemporaneous exchange" as defense to the attempted avoidance of a preference was instructive. The court was aware that the state statute did not have a 10-day grace period for perfection corresponding to section 547(e), but it appeared to leave open the possibility that the 10-day relation back period might not be absolute. *See id.* at 328, n. 8.

More directly, the Eighth Circuit in *In re Dorholt, Inc.*, 224 F.3d 871 (8th Cir. 2000), held that a refinanced mortgage which was perfected longer than 10 days after the transaction was completed, and only three days prior to the bankruptcy filing, was not avoidable. The court found that the "substantially contemporaneous" transfer defense was not eliminated by the 10-day relation-back rule, as some courts have found, so that perfection of the lender's security interest 16 days after the transfer took effect between the parties was "substantially

13

contemporaneous" with the transfer itself, and not avoidable as a preference.[3] This flexible approach is consistent with the Seventh Circuit's *Pine Top* analysis. Although the creditor's interest is absolutely protected by perfection within 10 days, this is not necessarily the creditor's only protection from avoidance by the trustee.

## CONCLUSION

For the reasons discussed above, the court holds that the trustee's motion for partial summary judgment is denied. Further proceedings will be scheduled to determine if the perfection was substantially contemporaneous with the execution of the mortgage and note. A separate order will be entered accordingly.

February 27, 2007

                                      Margaret Dee. McGarity
                                      Chief Judge, U.S. Bankruptcy Court

---

[3] The First Circuit recently held to the contrary and concluded the contemporaneous test was not meant to override the specific 10-day requirement of section 547(e). *In re Lazarus*, ___ F.3d ___, No. 06-1982, 2007 WL 49649 (1st Cir. Jan. 9, 2007). But this court is persuaded to follow the expanded holding of the Seventh Circuit's *Pine Top* decision.